ROGERS, J.
 

 This suit grows out of the contract entered into between the Shreveport Paving Company, Inc., and the city of Shreveport for the paving of Dove street from Norma street to the alley east of Vale street. The proceeding is one in concursus in which the parties litigant are four materialmen, the contractor, the contractor’s surety, the contractor’s assignees, and the municipality. The city of Shreveport, answering the suit, deposited in the registry of the court the full amount of cash, paving certificates and claims held by it for account of the contractor. Judgment was rendered by the court below recognizing the claims of the materialmen and ordering that they be paid by preference and priority
 
 out
 
 of the funds, certificates, and rights deposited in court by the municipality, but rejecting their demands against the contractor’s surety; rejecting the claim of the American National Bank, assignee of the contractor, for preferential payment, but recognizing the bank’s ownership of the remainder of the funds, certificates, and rights on deposit after the payment of the costs and the claims of the materialmen and also recognizing its claim, subject to certain credits, against the contractor; rejecting the claim of the ¿Etna Casualty & Surety Company, the contractor’s surety and assignee, to be paid by preference over the American National Bank; and also rejecting the demand of Dickson & Denny, plaintiff’s attorneys, for attorneys’ fees for convoking the concursus.
 

 The American National Bank appealed from the judgment so far as it rejected its claim to all the funds, certificates, and rights deposited in court and recognized the priority of the materialmen’s claims. One of the claimants, Standard Building Supply Company, also appealed from the judgment rejecting its demand for a personal judgment against the contractor’s surety, ¿Etna Casualty & Surety Company. Plaintiff, Uvalde Rock Asphalt Company, has answered the appeal of the American National Bank, praying for the allowance of the fees of Dickson & Denny, its attorneys.
 

 The contract between the'paving company and the municipality was signed on July 24, 1929, and, together with the bond, was filed for record on July 26, 1929. On August 27, 1929, by authentic act, the paving company, as collateral security for funds advanced and to be advanced, assigned to the American National Bank, of Shreveport, all the funds, paving certificates, or other evidences of debt due and to become due to the paving company by the municipality under the paving
 
 contract
 
 Notice of the assignment was duly given in
 
 *982
 
 writing by the assignee to the city of Shreveport. The municipal authorities promptly acknowledged receipt of this notice and accepted the assignment, without, however, assuming any obligation whatsoever towards the bank, except the payment to it in preference to the paving company, but not to the prejudice of any claim or lien that might be filed for labor and material in connection with the construction of the street.
 

 The cash, certificates, and accounts deposited in court by the city of Shreveport amounted to $3,469.74. The American National Bank intervened in the proceeding, claiming under its assignment a preferential right to the deposit for $3,462.43, the balance due it by the paving contractor. The materialmen against which this right is asserted are: Uvalde Bock Asphalt Company, claiming $405; Houston Oil Terminal Company, claiming $40.50; Standard Supply Company, claiming $288.68; and Meriwether Supply Company, Inc., claiming $1,212.08 — the claims totaling $1,946.26.
 

 The primary question to be determined is the one involved ip. the respective claims of the bank and the materialmen to preferential rights in the cash and evidences of debt on deposit in the registry of the district court.
 

 Elaborate arguments were submitted by the contending parties on the question of whether Act 187 of 1920, under which the paving contract was entered into, and Act 224 of 1918 (The Public Works Contract Statute), should be construed together or separately, as having absolutely no relation to each other. The bank contends that the latter proposition is legally correct, since the work was not done at the expense of the municipality but at the expense of the abutting property owners. That the materialmen occupy the position of ordinary, and not privileged, creditors, whose claims are primed by the bank’s assignment. Contrariwise, the materialmen assert that the former proposition is the correct one. They urge that Act 224 of 1918, as set forth in its title, was enacted by the Legislature to protect laborers and furnishers of material on all public works. That construing the words “at the expense of the city,” in section 1 of the statute, in connection with the title, simply means on the obligation, responsibility, or contract of the city. That the paving of its streets by a municipality is work done at its expense, whether the payment for the work be made out of the general tax funds, special taxes, or local assessments.
 

 But, in the state of the record, we are not permitted to consider the arguments in order to determine which one correctly interprets the statutes therein discussed. The arguments raise an issue wholly outside the pleadings, and the parties must stand or fall according to their pleadings. They cannot obtain what their pleadings do not warrant.
 

 The bank, in its intervention, alleges substantially that the paving contract was entered into under Act 187 of 1920; that it was the assignee, under a written assignment, for advances made and to be made to the contractor, of the funds, certificates, and other evidences of debt due or that might become due the contractor from the city of Shreveport; that its assignment was recognized by the municipality, which was furnished with a copy thereof, “but without prejudice to the rights of any claimants holding valid liens against such funds under the laws of Louisiana, and especially under Act 224 of 1918, as amended by Act 271 of 1926.” The intervener then shows the cash and evidences of debt in possession of the city of Shreveport, and alleges that, by reason of its assignment, it is entitled to all said cash and obligations, “with the exception of such portion of said funds or proceeds of said obligations, if any, as may be necessary to pay
 
 *984
 
 the legal and valid liens filed against said funds and proceeds by Creditors of said Shreveport Paving Company, Inc., who have furnished materials and supplies actually used in the construction of said paving work.”
 

 Intervener then attacks the claims of the four materialmen to the cash and obligations in the possession of the municipality only so far as they have not “complied with the provisions of Act 224 of 1918 as amended by Act 271 of 1926, known as the Public Building Contract Law of Louisiana,” alleging that the materialmen have not complied with the statute in the following particulars, viz.:
 

 (a) Said materials were not actually used in the construction of said paving.
 

 (b) Said claims were not recorded in accordance with law in the mortgage records of Caddo parish, La.
 

 (c) Copies and sworn statements of said claims were not served on the city of Shreveport according to law.
 

 (d) The amounts thereof are incorrect.
 

 Intervener attacks the claim of the Meriwether Supply Company, Inc., on the additional ground that it had released in writing its claim as a furnisher of materials used in the -work.
 

 It is plain from the foregoing summary of the pleadings that the intervener is not disputing the applicability of Act 224 of 1918, with its amendment, to the facts of this case. On the contrary, intervener expressly alleges that the statute is. the law of the case. And its sole complaint is that the material-men did not comply with the controlling statutory provisions in the particulars specifically enumerated in the petition of intervention. On their part, the materialmen admit that the paving contract was entered into under Act 187 of 1920; that the intervener’s assignment was restrictively accepted by the municipality; and that they are entitled to preferential payment of their claims under Act 224 of 1918 and its amendment. They deny that they failed to comply with the statutory provisions in the particulars set forth by the intervener.
 

 Therefore, the clear-cut and only issue between the parties is whether the intervener’s allegations of noncompliance by the material-men with the provisions of Act 224 of 191S and its amendment are true or not.
 

 Intervener’s objection to the claim of the Uvalde Rock Asphalt Company is that the materials set forth in the claim are not shown to have been used in the work. Claimant placed on the stand Emmett Cochran, president and general manager of the Shreveport Paving Company, Inc. This witness testified that he was familiar with the contract, the work done thereunder, and the account of the Uvalde Asphalt Paving Company. That his company purchased its paving material only from the Uvalde Asphalt Paving Company. That 145 tons of material so purchased at a cost of $3 actually went into and was used in that particular piece of work. This testimony was uncontradicted.
 

 A further objection made by intervener to this claim is that the affidavit attached thereto is not in proper form, and that the account is actually charged to E. Cochran, and not to the Shreveport Paving Company, Inc. The objection is unsound.
 

 The claim was sworn to by James A. Denny as the duly authorized agent of the Uvalde Rock Asphalt Company, and this declaration was not contradicted. The account is made out “E. Cochran (Shreveport Paving Company), Shreveport, La.” It is not pretended that the account was charged to Cochran personally. It is plain that the .charge was made against him as the president of the
 
 *986
 
 Shreveport Paving Company, or against the company itself! And the testimony in the ease shows that the materials set forth on the account were actually purchased by the Shreveport Paving Company, Inc., and used by it in the work.
 

 A payment of $30 to the asphalt company reduced its claim from $435 to $405, which was the amount awarded by the court below. We see no error in the judgment.
 

 Intervener assails the claim of the Houston Oil Terminal Company on the same grounds, except as to the manner in which the account is. charged, as it attacks the claim of the Uvalde Rock Asphalt Company. The claimant proved its claim as a furnisher of flux oil by the uncontradicted testimony of Mr. Cochran, and the declaration of James A. Denny, who swore to the correctness of the account, that he was the duly authorized agent of the claimant was not disputed. We do not find any merit in intervener’s objections to this claim.
 

 No complaint is made by the intervener against the claim of the Standard Building Supply Company, other than its general com plaint that none of the materialmen under the law is entitled to any preferential right. But this question, as we have hereinbefore shown, is not an issue in the case. The judgment in favor of the claimant is correct.
 

 The intervener has apparently abandoned its allegation that the Meriwether Supply Company, Inc., had released its claim against the Shreveport Paving Company, Inc. The release was signed by James S. Meriwether, president. But the company was in the hands of -a receiver at the time and Meriwether was not authorized to execute the document. The evidence shows, as a matter of fact, that the claim was not paid.
 

 Intervener’s only attack on this claim is that the verification of the account was made by J. G. O’Brien, assistant to the receiver, instead of by R. T. Moore, the receiver himself, who it is argued the notary declared was the person appearing before him. But, even if there were any force in it, this contention comes too late. The account as verified was offered and received in evidence without objection on the part of the intervener or any other interested party.
 

 The /Etna Casualty & Surety Company, the contractor’s surety, set up the assignment made to it by the Shreveport Paving Company, Inc., in its application for the bond as -giving it a preferential right to that of the American National Bank to the funds and obligations deposited in the district court. This issue was decided in favor of the bank, and the surety company has not appealed from the judgment. Hence, the issue is not presently before us.
 

 Inasmuch as the funds and obligations deposited in court by the defendant .municipality are more than sufficient to discharge the claim of the Standard Building Supply Company, the judgment of the court below rejecting the claimant’s demand for a personal judgment against the iEtna Casualty & Surety Company, the contractor’s surety, is manifestly correct.
 

 Plaintiff’s attorneys have not referred us to any law supporting their claim for attorneys’ fees for provoking this concursus. Act 298 of 1926, which repealed Act 262 of 1916, which was the controlling statute in Fidelity Homestead Ass’n v. Kennedy & Anderson, 158 La. 1059, 105 So. 64, refers to contracts for private and not for public work. Section 8 of Act 224 of 1918 authorizes the imposition of 10 per cent, of a claim as attorney’s fees upon a principal and his surety provided amicable demand be made upon both principal and surety 30 days prior to the institution of the concursus proceeding.
 
 *988
 
 It is questionable whether the statutory provision applies to a case of this character, where no judgment is recovered against the surety. But, in any event, there is no proof in the record that any amicable demand for payment has been made as required by the statute.
 

 Eor the reasons assigned, the judgment appealed from is affirmed. Costs of appeal to be paid by the American National Bank, intervener and appellant.